665 So.2d 470 (1995)
Gay MARTIN
v.
ELMWOOD MEDICAL CENTER.
No. 95-CA-415.
Court of Appeal of Louisiana, Fifth Circuit.
November 15, 1995.
*471 Edward J. Rivera, Brian Roth, Sessions & Fishman, New Orleans, for Defendant/Appellant.
Kerry E. Shields, Gretna, for Plaintiff/Appellee.
Before BOWES, GRISBAUM, and GOTHARD, JJ.
GOTHARD, Judge.
Defendant, Elmwood Medical Center (Elmwood), appeals a judgment of the Office of Worker's Compensation which held that claimant, Gay Martin:
1. Was injured during the course and scope of her employment.
2. Was entitled to receive temporary total disability benefits from December 3, 1992 to February 19, 1993.
3. Has failed to establish any period of disability after February 19, 1993.
4. Is entitled to the payment of all outstanding medical bills that were incurred, medication expenses and transportation expenses through February 19, 1993.
Further, the judgment held that defendant, Elmwood:
1. Was not arbitrary and capricious in its refusal to pay medical benefits.
2. Was arbitrary and capricious in its refusal to pay worker's compensation disability benefits, and assessed a penalty of 12% or $50.00 per day whichever is greater, not to exceed $2000.00 in aggregate, and attorney's fees of $1000.00.
Claimant filed this action on November 24, 1993 alleging she sustained an injury to her back on December 3, 1992 when she lifted a bag of wet linen in the course and scope of her employment with Elmwood. Although it did pay some of claimant's medical bills, Elmwood refused to pay any worker's compensation disability benefits. Elmwood takes the position that this claimant is not entitled to any worker's compensation benefits because she failed to show that she sustained a work-related injury.
At the start of trial, the parties stipulated that Ms. Martin reported an unwitnessed *472 accident to her supervisor on December 3, 1992, and that an accident report was filled out on that same day. A further stipulation established that Ms. Martin was an employee of Elmwood on the date of the incident, that her average weekly wage was $151.00, and that the appropriate weekly compensation for benefits would be $100.66.
At trial Ms. Martin testified that on the date of the accident she had been employed at Elmwood for about a year and a half as a housekeeper. Her duties included cleaning the bathrooms, vacuuming, mopping and dusting. On December 3, 1992, while working the 3:30 to 11:00 p.m. shift, she attempted to pick up a heavy, wet linen bag from the floor and place it into a large dumpster. She felt something "pull" in her back, so she called a supervisor, who met her in the emergency room of the medical center. The physician who treated her that night recommended Ms. Martin take two days off, and she heeded that advice. She returned to the emergency room a few days later and was treated by a different physician who released her for light duty. However, she was told not to lift, bend, stoop or squat.
Ms. Martin stated that she attempted to return to work after she was put on light duty, but was unable to complete the work tasks assigned to her because she was still required to clean baseboards, walls and elevators. She was simply told not to lift anything. However, to accomplish those tasks, Ms. Martin had to mop and vacuum, activities which caused her to experience pain. Ms. Martin testified that, because she could not do the work assigned to her, she wrote a letter of resignation.
Ms. Martin testified that she experienced spasms and tightness in her midback and right leg as a result of the accident. She testified that the emergency room doctor made an appointment for her with Dr. Chad Millet. After examining the claimant, Dr. Millet recommended therapy for three weeks, which Ms. Martin attended. That therapy helped with some of the back pain, but not all. She was also placed on certain medications, including Flexeril and Naprosyn, which offered her some relief. After the three weeks of therapy, the claimant returned to Dr. Millet. Although the doctor did not recommend additional therapy, the claimant felt she would benefit from further sessions with a chiropractor which she had begun during the same period. Consequently, she continued to consult the Behrman Chiropractic Clinic.
Ms. Martin's medical records were introduced into the record. The Elmwood emergency room reports show that the claimant was treated on December 3, 5 and 9, 1993 after an initial diagnosis of lower back strain. On December 9 she was released to limited duty with prohibitions against lifting over ten pounds and prolonged bending. At a follow up visit on December 14, 1992, she was referred to Dr. Millet.
Dr. Millet's report shows that he saw the claimant on December 16, 1992 and January 20, 1993. In the first report is contained Dr. Millet's diagnosis of mild thoracic and lumbar strain, for which he prescribed physical therapy. In the last report Dr. Millet released the claimant to full duty and discharged her.
The claimant also introduced medical records from the Behrman Chiropractic Clinic. According to those records, Ms. Martin was treated from December 15, 1992 through November 24, 1993. Her initial complaint was lower back pain. However, from February through September, 1993 she complained of new problems which the hearing officer found to be unrelated to the compensable injury. For these reasons the hearing officer awarded worker's compensation from the date of injury to February 19, 1993 when the new complaints arose.
In brief to this court the defendant argues that the trial court erred in finding that the claimant was temporarily disabled and entitled to benefits, in finding that Elmwood was arbitrary and capricious in its denial of benefits, and in awarding penalties for that conduct.
To receive benefits a worker must show initially that she suffered an injury as a result of an accident "arising out of and in the course of her employment. LSA-R.S. 23:1031 A. Louisiana courts have traditionally viewed the issue of whether an accident has occurred from the worker's perspective. *473 Williams v. Regional Transit Authority, 546 So.2d 150 (La.1989). Nonetheless, the worker has the burden of establishing a workrelated accident. Nelson v. Roadway Express, Inc., 588 So.2d 350 (La.1991). The trial court's decisions on the credibility of witnesses and the question of whether the claimant has met that burden are factual determinations not to be disturbed on appeal unless clearly wrong or manifestly erroneous. Gonzales v. Babco Farm, Inc., 535 So.2d 822 (La.App.2d Cir.1988); writ den. 536 So.2d 1200 (La.1988). In making those determinations, the trial court should accept as true a witness's uncontradicted testimony, although the witness is a party, absent "circumstances in the record casting suspicion on the reliability of this testimony." West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1147 (La. 1979). A worker's testimony alone may be sufficient to discharge his burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. West, supra; Bruno v. Harbert Intern. Inc., 593 So.2d 357, 361 (La. 1992). Given the facts presented at trial, by way of testimonial and documentary evidence, we find no error in the factual finding that a compensable injury occurred.
The issue of disability is determined by the totality of the evidence, including both lay and medical testimony. Baldwin v. Greater Lakeside Corp., 93-768 (La. App. 5 Cir. 1/25/94), 631 So.2d 1238. This court must give the hearing officer's factual findings concerning the claimant's work-related disability great weight on appellate review. They should not be disturbed where, as here, there is evidence which forms a reasonable basis for the finding. Baldwin, supra. We find that there is sufficient medical evidence contained in the record to support the hearing officer's finding that the claimant suffered a temporary disability from the time of the accident until February 19, 1993.
Finally, Elmwood argues that the hearing officer erred in finding that Elmwood was arbitrary and capricious in its failure to pay worker's compensation benefits and in awarding penalties and attorney's fees.
LSA-R.S. 23:1201.2 provides for the award of attorney's fees and penalties against an insurer who arbitrarily, capriciously, or without probable cause refuses to pay worker's compensation benefits. Elaine M. Lacava v. Albano Cleaners, 95-1141 (La. 6/27/95), 656 So.2d 990. Elmwood argues that it was justified in failing to pay worker's compensation benefits because the claimant voluntarily resigned before claiming a workrelated accident. In support of this argument defendants offered a document dated December 3, 1992 which was handwritten by the claimant stating:
I Gay S. Martin give my 2 weeks notice, starting Dec. 3, 1992 to Housekeeping Manager.
When questioned about this resignation at trial, Ms. Martin explained that she resigned after her return to work on light duty. She stated that it soon became apparent to her that she would not be able to fulfill her duties without further injuring her back. Since she was unable to do her job, she felt compelled to resign.
Stephen Brown, support services director for Elmwood at the time of the incident, testified that Ms. Martin came in immediately upon her arrival for work on December 3, 1992 and resigned. She was injured later that day and did not return for a full day of work after the injury. He stated that Ms. Martin's last day of work for Elmwood was December 17, 1992, and she was paid for any vacation or sick time she had accumulated, plus any wages for hours she actually worked.
Whether Ms. Martin offered her resignation before or after the accident is of no moment for consideration of whether she is entitled to worker's compensation benefits for her injury. By either account she was employed by Elmwood and involved in activities within the course and scope of that employment at the time of the injury. In fact, Elmwood stipulated to that fact at the onset of the trial. While the resignation may go to the credibility of the witness, it does not affect her right to collect worker's compensation *474 benefits once a judgment has been made that a compensable accident occurred. Further, the reports by Elmwood's own emergency room physicians, and that of Dr. Millet, that Ms. Martin sustained a lower back strain which prevented her from working, gave Elmwood ample reason to know that the claimant was entitled to receive worker's compensation.
Elmwood also argues that because the claimant quit on the same day she was paid her normal salary until December 17, 1992. They reason that since Dr. Millet released the claimant to work on December 16, 1992, refusal to pay worker's compensation benefits was not arbitrary and capricious. The record does not substantiate defendant's assertion. Dr. Millet's report released claimant for light duty on December 16, 1992, but clearly recommended that she undergo physical therapy. Dr. Millet did not discharge the claimant for full duty until January 20, 1993. Further, although Stephen Brown testified that Ms. Martin was paid vacation and sick leave accumulated, he did not verify that she was paid any regular wages during that period. Further, Elmwood has introduced no documentary evidence to support its claim that claimant was paid her normal wages during this period.
The claimant testified that she went to work and attempted to do what Elmwood classified as light duty but was unable to perform the tasks. Although the duties assigned to claimant while on light duty differ in the claimant's testimony and that of Elmwood's representative Mr. Brown, this is a credibility decision. The hearing officer was called upon to make that decision and the decision is reasonable. Consequently, we find no error in the finding of the hearing officer that Elmwood acted arbitrarily and capriciously in refusing to pay worker's compensation benefits, or in the award of penalties and attorney's fees. Further, because Elmwood did, in fact, pay all of the claimant's medicals as billed by Elmwood Emergency Services and Dr. Millet, we find the hearing officer was correct in holding that the failure to pay the additional applicable medical expenses as presented at trial was not arbitrary and capricious.
Elmwood also argues that the hearing officer erred in failing to limit the award of medical expenses to $750.00 as required by LSA-R.S. 23:1142 B. Elmwood asserts that since the claimant did not obtain the consent of the employer before seeking the nonemergency treatment at the Behrman Chiropractic Clinic, a $750.00 cap on those charges should be imposed. Elmwood's argument fails to take into account the exception contained in Section E of that statute which states:
In the event that the payor has denied that the employee's injury is compensable under this Chapter, then no approval from the payor is required prior to the provision of any diagnostic testing of treatment for that injury.
Because Elmwood's position in the trial court and in this court is that the claimant suffered no work-related compensable injury, the $750.00 cap does not apply. See also: Barron v. First Lake Properties, Inc., 93-902, (La.App. 5 Cir. 3/29/94), 636 So.2d 970.
For the foregoing reasons, the judgment of the Office of Worker's Compensation is affirmed.
AFFIRMED.